Squire Patton Boggs (US) LLP
Ronald S. Lemieux (State Bar # 120822)
ronald.lemieux@squirepb.com
1801 Page Mill Road, Suite 110
Palo Alto, California 94304
Telephone: +1 650 856 6500
Facsimile: +1 650 843 8777

Marisol C. Mork (State Bar # 265170)
marisol.mork@squirepb.com
Hannah Makinde (State Bar # 307907)
hannah.makinde@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: +1 213 624 2500
Facsimile: +1 213 623 4581

Attorneys for Defendant and Counterclaimant
Cypress Technology Co., Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OWLINK TECHNOLOGY, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>CYPRESS TECHNOLOGY CO., LTD., a foreign corporation; and DOES 1 through 25, inclusive,<br><br>Defendants.<br><br>CYPRESS TECHNOLOGY CO., LTD., a foreign corporation,<br><br>Counter-Plaintiff,<br><br>v.<br><br>OWLINK TECHNOLOGY, INC., a California corporation; and DOES 1 through 25, inclusive,<br><br>Counter-Defendants. | Case No. 8:21-cv-00717-SPG (KES)<br><br>**DEFENDANT CYPRESS TECHNOLOGY CO., LTD.'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY OF THOMAS NECHES**<br><br>Judge: Hon. Sherilyn Peace Garnett<br><br>Date: November 16, 2022<br>Time: 1:30 P.M.<br>Place: Courtroom 5C<br><br>Date Action Filed: April 19, 2021 |

**TO THE HONORABLE COURT, PLAINTIFF, AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 16, 2022, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 5C of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California, before the Honorable Sherilyn Peace Garnett, Defendant Cypress Technologies Co. Ltd. ("Cypress") will and hereby does move, pursuant to Federal Rules of Evidence 402, 403, and 702, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, for an order excluding the proposed expert testimony of Thomas Neches on the grounds that his opinions are speculative, not based on proven or accepted methodologies, and consist of nothing more than simply calculating numbers provided to him by plaintiff's counsel. Mr. Neches' testimony, therefore does not satisfy the foundational requirements for expert testimony and is unreliable, irrelevant, unduly prejudicial, and likely to confuse the trier of fact.

This Motion is made following efforts to meet and confer conducted pursuant to L.R. 7-3 on September 8, 2022. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Marisol Mork in Support of Motion to Exclude Expert Testimony of Thomas Neches, and the exhibits thereto, the pleadings and the records on file herein, and any oral argument that may be presented at the hearing on this Motion.

Dated: September 14, 2022          SQUIRE PATTON BOGGS (US) LLP

By: */s/Marisol C. Mork*
Ronald S. Lemieux
Marisol C. Mork
Hannah Makinde

*Attorneys for Defendant Cypress Technology Co., Ltd.*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- 2 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SQUIRE PATTON BOGGS (US) LLP**
555 South Flower Street, 31st Floor
Los Angeles, California 90071

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 6

I.   INTRODUCTION ............................................................................................. 6

II.  MR. NECHES' FLAWED OPINIONS ............................................................ 7

    a.  Summary of Opinions ............................................................................ 7

    b.  Mr. Neches Failed to Conduct an Adequate, Independent
        Investigation ......................................................................................... 9

    c.  Mr. Neches Failed to Consider The Potential Impact on Damages of
        the EBMA Termination Clause ........................................................... 10

    d.  Mr. Neches Arbitrarily Selected A "Commission Rate" ................... 12

    e.  Mr. Neches Failed to Conduct an Adequate, Independent
        Investigation ....................................................................................... 13

    f.  Mr. Neches' Opinion as to Unpaid Invoices Belies Common Sense ....... 14

    g.  Mr. Neches' Opinion on Damages Is Limited To The Breach of
        Contract Theory .................................................................................. 14

III. LEGAL STANDARD ..................................................................................... 15

IV.  ARGUMENT ................................................................................................. 16

    a.  Mr. Neches' Opinions Must Be Excluded Because They Are Not
        Premised On Reasonable Principles and Methodology ...................... 16

    b.  Mr. Neches' Opinions Must Be Excluded Because They Are Not
        Relevant to OWLink's Remaining Claims ......................................... 18

V.   CONCLUSION ............................................................................................... 20

MOTION TO EXCLUDE EXPERT TESTIMONY OF THOMAS NECHES

8:21-CV-00717-SPG (KES)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andreas Carlsson Prod., AB v. Barnes*,
No. CV 10-8396 CAS (CWX), 2012 WL 12911049 (C.D. Cal. July
19, 2012) ................................................................................................ 17

*Barabin v. AstenJohnson, Inc.*,
700 F.3d 428 (9th Cir. 2012) (en banc) ............................................... 15

*Cabrera v. Cordis Corp.*,
134 F.3d 1418 (9th Cir. 1998) .............................................................. 16

*Claar v. Burlington N.R.R. Co.*,
29 F.3d 499 (9th Cir. 1994) .................................................................. 16

*Daubert v. Merrell Dow Pharm., Inc.*,
43 F.3d 1311 (9th Cir. 1995) .......................................................... 16, 17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ....................................................................... *passim*

*DePaepe v. Gen. Motors Corp.*,
141 F.3d 715 (7th Cir. 1998) ................................................................ 15

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) ............................................................... 16

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997) ................................................................. 15, 16, 17

*Hendrickson v. Octagon, Inc.*,
225 F. Supp. 3d 1013 (N.D. Cal. 2016) ................................................ 19

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
87 F. Supp. 3d 928 (N.D. Cal. 2015) .................................................... 15

*Kennedy v. Collagen Corp.*,
161 F.3d 1226 (9th Cir. 1998) .............................................................. 16

MOTION TO EXCLUDE EXPERT TESTIMONY OF THOMAS NECHES

8:21-CV-00717-SPG (KES)

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*King Indiana Forge, Inc. v. Millennium Forge, Inc.*,
  No. 1:07-cv-00341-SEB-DML, 2009 U.S. Dist. LEXIS 96131,
  2009 WL 3187685 (S.D. Ind. Sept. 29, 2009)......................................................17

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ...................................................................................................15

*Lippe v. Bairnco Corp.*,
  288 B.R. 678 (S.D.N.Y. 2003) ..............................................................................17

*Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (2003) ...............................................................................19

*Messick v. Novartis Pharm. Corp.*,
  747 F.3d 1193 (9th Cir. 2014).................................................................................18

*United States v. Christophe*,
  833 F.2d 1296 (9th Cir. 1987)................................................................................15

*United States v. Diaz*,
  876 F.3d 1194 (9th Cir. 2017)................................................................................19

**Statutes**

Cal. Civ. Code § 3333.................................................................................................19

Cal. Civ. Code § 3426.3..............................................................................................19

**Other Authorities**

Fed. R. Evid. Rule 403..............................................................................................20

Fed. R. Evid. 702 ..............................................................................................*passim*

Fed. R. Evid. 703 .......................................................................................................17

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

3      One of the key issues to be resolved in this Action is whether Plaintiff OWLink
4   Technology, Inc. ("OWLink") has received all compensation it was owed for the
5   management services it provided pursuant to the Exclusive Business Management
6   Agreement ("EBMA") between it and defendant Cypress Technology Co., Ltd.
7   ("Cypress"). In its pending motion for summary judgment, Cypress presented the
8   Court with evidence showing the EBMA was properly terminated, and thus no further
9   payments are required. *See* ECF Nos. 46, 48 [Mot. for Summ. Judg.]. OWLink, on
10  the other hand, contends the EBMA was breached, and that it is therefore owed
11  damages. In support of its claims, OWLink designated Mr. Thomas Neches as an
12  expert to opine on OWLink's breach of contract damages at trial.

13      Mr. Neches' opinions should be excluded, however, as they fail to meet the
14  requirements of Rule 702 because they are neither reliable nor relevant. Indeed, Mr.
15  Neches failed to conduct his own investigation to verify the accuracy and reliability
16  of the summary data he received from counsel and relied upon in rendering his
17  damages opinions. His opinions also lack reliability as they are not premised on a
18  sound, commonly accepted methodology. In any event, Mr. Neches' opinions are
19  limited to the breach of contract claim and are irrelevant to all other claims as he was
20  not asked to—and did not—opine on damages that might arise from any alternative
21  legal theory as alleged in Plaintiff's complaint, including the Third (Violation of Cal.
22  Civ. Code § 1738.15); Fourth (Anticipatory Repudiation); Fifth (Declaratory Relief);
23  Sixth (Breach of Covenant of Good Faith and Fair Dealing), Seventh (Money Had
24  and Received), Eighth (Unjust Enrichment and Constructive Trust), Ninth (Federal
25  Trade Secret), and Tenth (California Trade Secrets) causes of action.

26      Given the lack of reliability and/or relevance, Mr. Neches's testimony offers
27  nothing of use to the jury. The Court should therefore exercise its gatekeeping
28  function and preclude Mr. Neches from offering any opinions on damages at the trial.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- 6 -

**II.    MR. NECHES' FLAWED OPINIONS**

    **a.    Summary of Opinions**

Mr. Neches is a certified public accountant who claims "█████████████ █████████████████" Declaration of Marisol Mork ("Mork Decl."), Exh. A at 1. OWLink retained Mr. Neches to opine on the economic damages potentially available resulting from the purported wrongful acts alleged in the First Amended Complaint. *Id.* at 1.

As noted in Mr. Neches' report, on March 20, 2014, OWLink and Cypress entered into an Exclusive Business Management Agreement (the "EBMA") that purported to assign "███████████████████████████████████████████ █████████████" *Id.* at 2. Pursuant to that agreement, Crestron and Cypress also entered into a separate agreement entitled "Crestron Modified Standard Terms and Conditions for Purchase of Products and Services" (the "2014 ODM Contract"). *Id.*; Mork Decl., Exh. C at 1. For each product sold by Cypress to Crestron, Cypress developed a quote as the original proposed price. Mork Decl., Exh. A at 2; Mork Decl., Exh. C § 2.3. Cypress provided that original price quotation to OWLink. After discussions between itself and Crestron, OWLink modified the original price quotation from Cypress and forwarded an adjusted proposed price to Crestron. Mork Decl., Exh. A at 3; Mork Decl., Exh. C §§ 2.3 & 3.1. Once Crestron agreed to the modified price quotation received from OWLink, OWLink then forwarded each purchase order received from Crestron to Cypress. Mork Decl., Exh. A at 3; Mork Decl., Exh. C § 2.3. Crestron paid Cypress directly and Cypress then forwarded to OWLink the difference between its original proposed price and the modified price paid by Crestron as OWLink's compensation. Mork Decl., Exh. A at 3; Mork Decl., Exh. C § 3.1.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Mr. Neches states that this arrangement was followed by the Parties for almost six years. From February 13, 2015 through August 19, 2020, Mr. Neches explains that " ███████████████████████████████████ " and that Cypress " █████████████████████████████ " *Id.* at 3. Based on statements made to him by OWLink's counsel, Mr. Neches stated his belief that " ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ " Mork Decl., Exh. A at 3. " █████████████████████████████████████████████████████ " *Id.*

Mr. Neches further explains that he was informed by OWLink's counsel that " ███████████████████████████████████████████████████████████████████████ ." *Id.* Mr. Neches understands that OWLink seeks the payment of " ███████████████████████████████████████████████████████████████████████████████████ *See id.* at 3 & 6. To that end, Mr. Neches avers that OWLink is entitled to damages ███████████████████████████████████ . *Id.* at 6.

Alternatively, Mr. Neches explains that " ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████ " *Id.* at 3. For that alternative, Mr. Neches opines ███████████████████████████████████████████████ . *Id.* at 6. His opinions ███████████████████████████████████████████████ *Id.* at 1, 4.

///
///
///

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

### b.   **Mr. Neches Failed to Conduct an Adequate, Independent Investigation**

The first step in Mr. Neches' analysis was to purportedly ████████

████████ Mork Decl., Exh. A at 4.  He explains that the ████████

████████ *Id.*

At his deposition however, Neches admitted that he did not undertake any efforts to independently verify the accuracy of the summaries received from counsel. He limited his review to spreadsheets provided by OWLink's counsel summarizing the sales transactions and "documents that showed purchase order numbers and invoice numbers and invoice dates and invoice amounts." Mork Decl., Exh. B at 13:22-14:23; 9:24-10:6. Mr. Neches admitted that he "did not look at underlying documents that were the basis of those Excel spreadsheets." *Id.* at 14:4-8. Nor did he verify the summary information contained in the spreadsheets by comparing that data with the actual transaction documents or speaking with any knowledgeable witnesses. *Id.* at 14:4-8, 19-23. Notably, Mr. Neches did not review <u>any</u> of the original price quotes that Cypress provided to OWLink. *Id.* at 13:3-9. He did not speak to anyone besides OWLink's counsel regarding any issues in this case. *Id.* at 66:16-20. In his own words, "the extent of [his] verification of the accuracy and completeness of the information in the Excel spreadsheets [he] relied on" was simply to "notice[]" that the "spreadsheets that were [allegedly] prepared by Cypress [and given to him by OWLink's counsel] and [the] spreadsheets that were prepared by OWLink . . . agreed." *Id.* at 14:13-18.

In addition, Mr. Neches did not conduct any investigation regarding the termination provisions in the EBMA or 2014 ODM Contract, despite acknowledging in his report that Cypress contends the 2014 ODM Contract was terminated and that

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Section 7.1 of the EBMA provides for termination upon the termination of the 2014 ODM Contract. *See* Mork Decl., Exh. B at 43:17-20 & 44:18-45:5; *see also id.* Exh. A at 3. Though this topic was explored in the depositions of numerous witnesses, including those of two Crestron representatives, Mr. Neches only reviewed what he was provided by OWLink's counsel—a three-page excerpt of the deposition transcript of Crestron's corporate representative, Gary Timblin. *See* Mork Decl., Exh. B at 45:19-22; 48:11-13.

### c.  <u>Mr. Neches Failed to Consider The Potential Impact on Damages of the EBMA Termination Clause</u>

Mr. Neches agreed that any damages model must account for various risk factors, including the relevant termination clauses. Mork Decl., Exh. B at 20:11-24. Yet, he did not consider the EBMA's termination clause as a risk factor in rendering his expert opinion simply because he personally "considered it unlikely that the contract would be terminated . . . ." *Id.* at 20:25-21:8 & 21:18-25 ("I did not specifically include [the actual termination provisions] in my risk factor analysis."); *see also* Mork Decl., Exh. C § 7.1 ("This Agreement will commence on the Effective Date and continue until the earlier of: 1) expiration or termination of the ODM Contract, or 2) termination by the Parties pursuant to Section 7.2 or 7.3 below.").

Similarly, Mr. Neches did not meaningfully consider the 2014 ODM Contract's termination for convenience clause—that provides Crestron the right to terminate that contract for any [or no] reason upon 15 days' notice—when opining on damages. *See* Mork Decl., Exh. B at 32:15-33:6 & Errata; *see also* Mork Decl., Exh. D § 29.2. Again with only a circular explanation, Mr. Neches dismissively concluded that the possibility of termination was "extremely low" because the parties had already been working together for six years and he could not imagine a scenario where Crestron would wish to terminate. *See* Mork Decl., Exh. B at 32:15-33:6 & Errata; *see also id.* at 33:17-34:1 ("I saw no reason other than OWLink['s counsel's

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1    contention than]  Cypress and Crestron agreeing to cut OWLink's compensation out
2    of the price to terminate the agreement.").

3        Critically, Mr. Neches' was not provided complete copies of depositions in
4    this matter which left him unable to consider Crestron's testimony that, ████████
5    ██████████████████████████████████████████████████
6    ██████████████████████████████   Mork Decl., Exh. E at 10:18-11:7 &
7    28:11-29:11. Without access to the depositions in this case, Mr. Neches was denied
8    the opportunity to contextualize and understand the excerpt he received. *See* Mork
9    Decl., Exh. B at 45:19-22 & 48:11-13 (discussing receipt of three pages of deposition
10   transcript on another topic). Accordingly, he was left with the incorrect impression
11   that the only scenario where Crestron would terminate would be in coordination with
12   Cypress to cut out OWLink's compensation. *See id.* at 32:15-33:6 & Errata; *see also*
13   *id.* at 33:17-34:1. This simply is not what actually transpired.

14       Mr. Neches' conclusion regarding the low possibility of termination also failed
15   to consider current market conditions, such as enduring global supply shortages and
16   challenges stemming from the COVID-19 pandemic. Even when specifically
17   questioned about his seven-year future projection for damages that relies on and
18   requires annual increases of 4.4 percent in the face of the current economy, Mr.
19   Neches baldly asserted that his opinion is "a reasonable estimate based on the
20   [unidentified] trend of growth." Mork Decl., Exh. B at 92:8-93:2; *see also id.* at 93:4-
21   94:5 (stating projections are based on the still unidentified "best information that's
22   available today" while ignoring counsel's question regarding high inflation and
23   global recession). Indeed, Mr. Neches projects damages nearly eight years into the
24   future based on his subjective view that the parties' past six-year relationship
25   rendered it "unlikely that the contract would be terminated . . . ." *Id.* at 20:25-21:8.

---

[1] Peculiarly, Mr. Neches equivocated at the meaning of a termination for convenience, though he
ultimately testified to his understanding of an at-will termination—a contract that could be
terminated for any reason or no reason at all. Mork Decl., Exh. B at 18:7-12; *see id.* at 17:15-21;
19:7-15.

MOTION TO EXCLUDE EXPERT TESTIMONY OF THOMAS NECHES

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

### d.    <u>Mr. Neches Arbitrarily Selected A "Commission Rate"</u>

Mr. Neches cherry-picked select information from the summaries provided to him from OWLink's counsel to "create" support for his opinion. Indeed, to reach Mr. Neches' estimated damages for the period January 2021 to February 2022, Mr. Neches applied a 20.4 percent "commission rate". *Id.* at 24:15-23. Mr. Neches concedes that the last time OWLink received compensation[2] equal to or higher than 20.4% was in May of 2018. Yet, Mr. Neches inexplicably opines that the 20.4% commission rate, despite not having been reached since May 2018, is the correct rate. Mork Decl., Exh. B at 25:15-21. In fact, Mr. Neches artificially created the 20.4% rate by using an "average rate" calculated from a subset of the summary data provided to him by OWLink's counsel. Even though Mr. Neches purported to rely on the parties' entire 6-year relationship to support a future damages projection of 7 years, when determining what might be the appropriate rate of compensation he only used a subset of that data. Mr. Neches conveniently ignores the first two years of the Parties' relationship—a full third of the time period involved—in order to artificially maximize the past compensation rate. Mr. Neches specifically chose to exclude data from the first two years of the business relationship because the post-2017 "trends" allowed for higher damages by doing so. *See id.* at 28:17-29:12. When challenged, Mr. Neches merely repeated his conclusion without indicating any reliable source supporting his methodology. *See id*. at 29:12 ("I stand by my calculation.").[3]

///

///

---

[2] Mr. Neches, and OWLink in general, attempts to recharacterize the compensation required under the EBMA by repeatedly referring to it as "commissions." The EBMA, however, never uses the term "commission" and consistently describes the monetary consideration due to OWLink as "compensation" for the management services OWLink is required to provide under the EBMA.

[3] Similarly unexplained, Mr. Neches adopted a 4.66 percent discount rate based on Moody's AAA Seasoned Bond Yield, even though this case has nothing to do with bonds. Mork Decl., Exh. B at 101:13-25.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**e.    Mr. Neches Failed to Conduct an Adequate, Independent
Investigation**

Although there is no dispute that the relationship between the parties ended in
August 2020, Mr. Neches opines that OWLink is entitled to over seven years of
damages ███████████████ through December 2027. *See* Mork Decl., Exh. A at 6*;
id*., Exh. B at 74:18-22. This amount consists ████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████ *See* Mork Decl., Exh. A at 6.

In essence, Mr. Neches admits that he arbitrarily selected a five-year
projection. *See* Mork Decl., Exh. B at 75:5-14 ("just based on my experience"); *id.*
at 76:3-7 ("I don't think I can cite a source document."). Mr. Neches also had no
explanation for the additional six months of damages, nor could he explain why
damages were calculated for five years from January 2022 as opposed to the date of
the EBMA's termination, *i.e.*, August 2020. *See id.* at 82:17-83:9 ("It was for
simplicity sake and because it seemed reasonable to do it"; and "five years plus some
increment seems reasonable to me."). Indeed, Mr. Neches initially testified that a
portion of the seven and a half year projection (from August 2020 to July 2022)
consisted of historical data through the end of Q2 for 2022, despite the fact that the
end of that period (June 30, 2022) had not even occurred at the time of issuing his
report in May of 2022 and no such data existed. *See id.* at 76:8-23, 78:7-21 & Errata.
He then attempted to clarify that he selected July 2022 as the end of his "historical"
period of data because "that's when [he] expected approximately [his] deposition
would be." *Id.* at 76:24-77:1; *see also id.* at 78:7-21.

Mr. Neches ultimately opines that OWLink is entitled to an amount of damages
spanning seven years from 2020 to 2027, despite his prior testimony that he routinely
applies a five-year period when calculating future damages. *See id.* at 82:6-83:12;
Mork Decl., Exh. A at 5-6.

///

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**f.    Mr. Neches' Opinion as to Unpaid Invoices Belies Common Sense**

Mr. Neches agrees that, pursuant to the terms of the EBMA, OWLink's compensation was "the difference between the amount Crestron ultimately paid [to Cypress] and the amount that Cypress originally put into its bid [to OWLink]." Mork Decl., Exh. B at 6:17-19; *see id.* at 6:8-7:10; *see also* Mork Decl., Exh. C § 3.1. For example, under this compensation mechanism, Mr. Neches agreed that if OWLink had negotiated a purchase price with Crestron that was the same as the price quote from Cypress, no compensation would be owed to OWLink. Mork Decl., Exh. B at 9:16-21. Yet, Mr. Neches opines, contrary to reason and common sense, that OWLink is entitled to compensation for invoices that were cancelled and never paid. Specifically, Mr. Neches contends that OWLink is owed compensation for unpaid invoices issued prior to August 20, 2022, even though Crestron cancelled the corresponding purchase orders, the orders were not filled, and Crestron never paid Cypress for those orders. *Id.* at 51:21-52:9; *see also id.* at 52:12-17 ("I have assumed that [OWLink is] entitled . . . to that compensation based on instructions by counsel to OWLink."); *id.* at 53:8-17 ("The mechanism I used in terms of the amount that is due is relying on interpretation of the contract by counsel to OWLink.").

**g.    Mr. Neches' Opinion on Damages Is Limited To The Breach of Contract Theory**

Finally, Mr. Neches also clarified that his opinion of damages in the amount ▮▮▮▮▮▮▮ for the period of 2020 to 2027 is available to OWLink "*under the breach of contract theory of damages.*" Mork Decl., Exh. B at 81:23-82:5 (emphasis added); *id.*, Exh. A at 6 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). Mr. Neches' damages opinion did not consider any alternative compensation methods available under the EBMA. *See* Mork Decl., Exh. B at 8:4-15 ("As I sit here today, I don't remember an alternative compensation method."); *see also id.* at 66:10-15 (retained to calculate economic damages); *id.* at 48:16-49:1 (unable to explain quantum meruit). Mr. Neches did not provide any

- 14 -

testimony to support the other claims for relief in the First Amended Complaint.  *See
Id.* at 81:23-82:5; *id.* at 8:14-15; *see also id.* at 53:8-17 ("The mechanism I used in
terms of the amount that is due is relying on interpretation of the contract by counsel
to OWLink.").

## III.    <u>LEGAL STANDARD</u>

To be admissible at trial, expert testimony must be both reliable and relevant.
*Daubert*, 509 U.S. at 589.  The District Court is the "gatekeeper" and must determine
whether an expert is qualified and whether his testimony is reliable and relevant.
*Barabin v. AstenJohnson, Inc.*, 700 F.3d 428, 431 (9th Cir. 2012) (en banc); *see* Fed.
R. Evid. 702. The purpose is "to make certain that an expert, whether basing
testimony upon professional studies or personal experience, employs in the
courtroom the same level of intellectual rigor that characterizes the practice of an
expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152
(1999). The obligation to ensure that opinions are relevant and not confusing,
misleading, or unduly prejudicial is particularly potent over experts, whose testimony
can "be both powerful and quite misleading." *Daubert*, 509 U.S. at 595 (citation
omitted).

If the Court determines that an expert is qualified, then the Court's inquiry
should focus on "whether the jury will receive appreciable help from expert
testimony." *United States v. Christophe*, 833 F.2d 1296, 1299 (9th Cir. 1987)
(internal quotations omitted). Expert "testimony must be grounded in the methods
and procedures of science and signify something beyond subjective belief or
unsupported speculation." *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
87 F. Supp. 3d 928, 939 (N.D. Cal. 2015) (internal quotation marks omitted).  Each
opinion must have "analytically sound bases." *DePaepe v. Gen. Motors Corp.*, 141
F.3d 715, 720 (7th Cir. 1998).  And those bases must be "connected to existing data"
through reliable means, not "the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*,

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

522 U.S. 136, 146 (1997). The burden is on the party presenting the expert testimony to meet the Rule 702 standard. *Daubert*, 509 U.S. at 592 n.10.

## IV.   ARGUMENT

### a.   Mr. Neches' Opinions Must Be Excluded Because They Are Not Premised On Reasonable Principles and Methodology

For expert testimony to be reliable, it must be "based on sufficient facts or data" and be "the product of reliable principles and methods." Fed. R. Evid. 702(b)– (c). This element requires the opinion to be built on "sufficient factual grounds on which to draw conclusions." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025-26 (9th Cir. 2022) (quoting *Damon v. Sun Co., Inc.*, 87 F.3d 1467, 1475 (1st Cir. 1996) (internal quotation marks omitted); *see also Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998) ("[T]he focus of the inquiry envisioned by Rule 702 must be on the principles and methodology underlying an expert's testimony, not on the conclusions."). An expert's opinions are not reliable where the expert bases his conclusions on "mere subjective beliefs or unsupported speculation." *Claar v. Burlington N.R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994). "An opinion based on ... unsubstantiated and undocumented information is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998).

In determining the reliability of proffered expert testimony, the district court's task "is to analyze not what the experts say, but what basis they have for saying it." *Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1316 (9th Cir. 1995). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co.*, 522 U.S. at 146. To avoid this disconnect, the proponent of expert testimony must "explain the

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1    methodology the experts followed to reach their conclusions [and] point to any

2    external source to validate that methodology." *Daubert II*, 43 F.3d at 1319.

3         It is unreasonable for Mr. Neches to accept, without question, the summarized

4    data and excerpts provided to him by OWLink's counsel. *See King Indiana Forge,*

5    *Inc. v. Millennium Forge, Inc.*, No. 1:07-cv-00341-SEB-DML, 2009 U.S. Dist.

6    LEXIS 96131, at *4, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009) ("When an

7    expert's opinion merely parrots information provided to him by a party, that opinion

8    is generally excluded."); *Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003)

9    (reasoning that expert opinions based on one-sided interpretations of record evidence

10   fail to satisfy the requirements of Rule 702). Indeed, Mr. Neches merely adopted

11   OWLink's legal concepts without regard to the contract terms at issue that would

12   necessarily impact his analysis. *See* Mork Decl., Exh. B at 14:4-8, 19-23; *id.* at 66:16-

13   20.

14        Compounding this problem, Mr. Neches could not explain or identify a basis

15   for his opinions except to maintain that he stood by them. *See id.* at 33:17-34:1 ("I

16   saw no reason other than . . . Cypress and Crestron agreeing to cut OWLink's

17   compensation out of the price to terminate the agreement."); *id.* at 92:8-93:2 & 93:4-

18   94:5 (defending growing damages projection without acknowledging current market

19   recession or identifying a single supportive source); *id.* at 28:17-29:12 (asserting "I

20   stand by my calculation," using a 20.4% "commission rate" despite historical data

21   showing such rate had not been achieved since 2018). This is the very type of *ipse*

22   *dixit* the Court should reject. *See Gen. Elec. Co.*, 522 U.S. at 146; *King Indiana*

23   *Forge, Inc.*, 2009 WL 3187685, at *2; *see also Andreas Carlsson Prod., AB v.*

24   *Barnes*, No. CV 10-8396 CAS (CWX), 2012 WL 12911049, at *3 (C.D. Cal. July

25   19, 2012) (excluding proposed expert whose opinions were merely "simple

26   arithmetic"). Moreover, Mr. Neches does not satisfy Rule 703 by his inability to

27   disclose any underlying support for his opinions.

28

- 17 -

As discussed above, Mr. Neches' opinions reflect neither reasoned analysis nor common sense. When questioned about his report, Mr. Neches could not identify any basis for his opinion, thereby leaving analytical gaps between the available data and his opinions. Thus, Mr. Neches based his opinions on speculation and conjecture that is not appropriate from a purported expert, rendering his testimony as unreliable and warranting its exclusion.

**b.** **Mr. Neches' Opinions Must Be Excluded Because They Are Not Relevant to OWLink's Remaining Claims**

As Mr. Neches stated, his task was limited to the determination of damages resulting from a breach of contract. Mork Decl., Exh. B at 81:23-82:5 (testifying estimated damages from 2020 to 2027 are available "under the breach of contract theory of damages); *see also id.* at 8:4-15, 66:10-15, 48:16-49:1. Accordingly, Mr. Neches' opinion is not relevant to any other claim asserted by OWLink.

Rule 702 requires that expert testimony assist the trier of fact in understanding the evidence or determining a fact in issue. Fed. R. Evid. 702(a). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotation omitted). Although "[t]he relevancy bar is low," expert testimony must have "a valid connection to the pertinent inquiry." *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196–97 (9th Cir. 2014). Fundamentally, "[t]he first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." Federal Judicial Center, Reference Manual on Scientific Evidence 432 (3d ed. 2011).

Mr. Neches' opinions were not based on a quantum meruit theory of damages. Mork Decl., Exh. B at 48:16-49:1. Repeatedly, Mr. Neches refers to ███████ ████████████████████████████████████████████████ *See* Mork Decl., Exh. A at 5-6. Yet, such assumptions do not assist in the calculation of damages for tort-related or trade secret claims. Indeed, nowhere in Mr. Neches' report or during

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

his deposition did Mr. Neches ever refer to any purported trade secrets of OWLink or misappropriation thereof. Without having even considered any potential trade secrets or their value, Mr. Neches' opinions are therefore not helpful to a jury's assessment relating to OWLink's trade secret claims. *See* Cal. Civ. Code § 3426.3 (providing for damages for actual loss and unjust enrichment resulting from trade secret misappropriation).

Similarly, Mr. Neches' assumptions arising from a breach of contract preclude his opinions from applying to OWLink's equitable or alternative claims to a breach of contract (the Third through Eighth Claims).[4] As discussed above, Mr. Neches failed to consider other factors in his damages analysis, namely (1) the EBMA and 2014 ODM Contract termination clauses, (2) Crestron's cancellation of purchase orders, and (3) the testimony of Crestron's corporate representative testifying that company-wide supply contracts were terminated and new relationships were developed under new terms. Instead, Mr. Neches merely adopted the theories of OWLink's counsel and without any independent verification. *See* Mork Decl., Exh. B. at 53:8-17 ("The mechanism I used in terms of the amount that is due is relying on interpretation of the contract by counsel to OWLink."); *see, e.g.*, *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) ("[W]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."). Thus, Mr. Neches' opinions will not aid the jury.

Moreover, these failures are important to OWLink's equitable claims, as the Third through Eighth Claims provide for compensatory damages intended to make a claimant whole. *See* Cal. Civ. Code § 3333 ("For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will

---

[4] *See, e.g.*, *Hendrickson v. Octagon, Inc.*, 225 F. Supp. 3d 1013, 1032 (N.D. Cal. 2016) (claim for money had and received "arises in equity"); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) (considering an unjust enrichment claim synonymous with the equitable remedy known as restitution).

MOTION TO EXCLUDE EXPERT TESTIMONY OF THOMAS NECHES

compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."). But, Mr. Neches' failure to consider all relevant factors prohibits him from assessing how OWLink might be made whole, and whether Cypress was a proximate cause of the alleged detriment. Indeed, these unexplained gaps substantially outweigh any limited probative value of Mr. Neches' opinions, create a serious danger of confusing and misleading the jury, and thus, run afoul of Rule 403. *See also Daubert*, 509 U.S. at 595 ("[A] judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules.").

Accordingly, Mr. Neches' opinions resulting from the assumption of a breach have no bearing on OWLink's Third Claim (Violation of Cal. Civ. Code § 1738.15); Fourth Claim (Anticipatory Repudiation); Fifth Claim (Declaratory Relief); Sixth (Breach of Covenant of Good Faith and Fair Dealing), Seventh (Money Had and Received), Eighth (Unjust Enrichment and Constructive Trust), Ninth (Federal Trade Secret), and Tenth (California Trade Secrets) causes of action. His opinions thus would only serve to confuse the jury and should therefore be excluded as irrelevant. *See Daubert*, 509 U.S. at 591.

## V.   **CONCLUSION**

For the foregoing reasons, the Court should grant Cypress' Motion to Exclude the Testimony of Thomas Neches and bar him from testifying at trial.

Dated: September 14, 2022          SQUIRE PATTON BOGGS (US) LLP


By: */s/Marisol C. Mork*
Ronald S. Lemieux
Marisol C. Mork
Hannah Makinde

*Attorneys for Defendant Cypress Technology Co., Ltd.*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- 20 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

MOTION TO EXCLUDE TESTIMONY OF THOMAS NECHES