JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association, | Case No.: 2:23-cv-01402 SPG-RAOx |
| Plaintiff, | **CONSENT DECREE** |
| v. | |
| SAUSE BROS., INC., an Oregon corporation, | |
| Defendant. | |

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Sause Bros., Inc., an Oregon corporation ("Sause Bros." or "Defendant") operates a facility at 1607 W. Pier D Street, Long Beach, CA 90802 ("Facility").

**WHEREAS,** the Facility industrial activities consist of tugboat and crew boat docking, boat, equipment and vehicle maintenance, forklift, truck and vehicle traffic, and shipping, receiving, storage and use of chemicals, oil, tires, paint, and parcels. The Facility is categorized under Standard Industrial Classification ("SIC") Code 4492, covering towing and tugboat services.

**WHEREAS,** stormwater discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 97-03-DWQ, and as amended by Water Quality Orders Nos. 2015-0057-DWQ and 2015-0122-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Defendant's operations at the Facility may result in discharges of pollutants into waters of the United States that are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a

stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on December 22, 2022, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ and Order 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) TMDL Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

**WHEREAS**, on February 24, 2023, LA Waterkeeper filed a complaint against Sause Bros. in the Central District of California, Civil Case No. 2:23-cv-01402 SPG-RAOx ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Long Beach Inner Harbor ("Receiving Waters");

1    **WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or
2  "Parties") agree that it is in their mutual interest to enter into a Consent Decree
3  setting forth terms and conditions appropriate to resolving the allegations set forth in
4  the 60-Day Notice and Complaint without further proceedings;

5    **WHEREAS**, all actions taken by the Defendant pursuant to this Consent
6  Decree shall be made in compliance with all applicable federal, state and local rules
7  and regulations.

8    **NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE**
9  **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**
10  **FOLLOWS:**

11    1.    The Court has jurisdiction over the subject matter of this action pursuant
12  to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

13    2.    Venue is appropriate in the Central District Court pursuant to Section
14  505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the
15  alleged violations are taking place is located within this District;

16    3.    The Complaint states a claim upon which relief may be granted against
17  Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

18    4.    LA Waterkeeper has standing to bring this action;

19    5.    The Court shall retain jurisdiction over this action for purposes of
20  interpreting, modifying, or enforcing the terms of this Consent Decree, or as long
21  thereafter as necessary for the Court to resolve any motion to enforce this Consent
22  Decree, but only regarding issues raised within the Term of this Consent Decree.

23  I. **OBJECTIVES**

24    6.    It is the express purpose of the Setting Parties through this Consent
25  Decree to further the objectives of the Clean Water Act, and to resolve all issues
26  alleged by LA Waterkeeper in its 60-Day Notice and Complaint. These objectives
27  include compliance with the provisions of this Consent Decree, compliance with all

28

terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

8.     <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within one (1) business day of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

9.     <u>Court Notice</u>. Plaintiff shall file a notice of proposed settlement with the Court within one (1) business day of the final signature of the Parties of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-day review period.

10.     <u>Entry of Consent Decree</u>. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B. DEFINITIONS

11.     Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules.

Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a. "BAT" means the Best Available Technology Economically Achievable.

b. "BCT" means the Best Conventional Treatment Technology.

c. "BMPs" means Best Management Practices.

d. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f. "Discharge Point" means each outfall and discharge location designated in the then-current SWPPP for the Facility.

g. "Effective Date" means the date on which this Consent Decree is entered by the Court.

h. "MIP" means a Monitoring Implementation Plan.

i. "PPT" means Pollution Prevention Team.

j. "Qualifying Storm Event" or "QSE" shall have the definition set forth in the General Permit.

k. "Reporting Year" means the period from July 1 of a given year to June 30 of the following year.

l. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

m. "SWPPP" means a Storm Water Pollution Prevention Plan.

n. "Term" means the period between the Effective Date and the "Termination Date."

o. "Termination Date" means the latest of:

i.  June 30 following two (2) years from the Effective Date; or

ii.  seven (7) calendar days after the final resolution of any proceeding or process to enforce the Consent Decree initiated pursuant to the dispute resolution provisions of this Consent Decree prior to June 30 following two (2) years after the Effective Date.

p.  "Wet Season" means the seven-month period beginning October 1st of any given year and ending April 30th of the following year.

III. **COMMITMENTS OF THE SETTLING PARTIES**

    **A.  STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES**

12.  <u>Non-Storm Water Discharge Prohibition</u>: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.  <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current BMPs described in the Facility's SWPPP, Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those that achieve BAT/BCT and to comply with the General Permit's Discharge Prohibitions and Receiving Water Limitations.

14.  <u>Rain Gauge</u>. Defendant shall install a rain gauge at the Facility on or before the Effective Date. The rain gauge shall be capable of measuring precipitation down to at least 0.1 inches. During the Term, Defendant shall collect data using the gauge for all precipitation events to the nearest 0.1 inch. Data from the rain gauge shall be conclusive of precipitation quantities for purposes of this Consent Decree.

15. <u>Structural and Non-Structural BMPs for the Facility</u>: Within sixty (60) days of the Effective Date, Defendant shall develop and implement the following BMPs at the Facility:

    a. Defendant shall contract with a third-party maintenance firm to conduct annual maintenance of existing discharge point filters containing StormwaterBIOCHAR metal-sorbent filtration materials ("BIOCHAR"). BIOCHAR filters shall be periodically replaced with equivalent filters (i) based upon monitoring results prior to each Wet Season, or (ii) when otherwise required to be replaced based upon manufacturer's recommendations.  If in the reasonable professional opinion of Defendant's consultant BIOCHAR filter replacements are unsuccessful in improving performance compared to switched-out filters, then upon such determination, Defendant shall within thirty (30) days install additional drums containing BIOCHAR filters or equivalent filter media at each affected discharge point.

    b. Defendant shall conduct routine manual sweeping of all outdoor areas of the Facility at least two (2) times per week.  Defendant shall further conduct quarterly detailed mechanized sweeping of all outdoor areas of the Facility.

    c. Defendant shall conduct monthly inspections to determine if non-industrial runoff or dirt/debris accumulation from the adjacent Robertson's Ready Mix property are occurring and adversely impacting BMP performance at Discharge Point 2.  If such non-industrial runoff or dirt/debris accumulation is occurring, Defendant shall implement additional BMPs to the extent required under the General Permit.

### B. SAMPLING AT THE FACILITY

16.     Defendant shall continue to follow the monitoring program outlined in the Facility SWPPP that is consistent with the General Permit. Each Reporting Year, Defendant shall collect storm water samples of storm water discharge from each Discharge Point from four (4) Qualifying Storm Events, including the first two (2) Qualifying Storm Events during the first half of the Reporting Year, and two (2) Qualifying Storm Events during the second half of the Reporting Year. The Defendant shall not be required to collect samples during rain where conditions are unsafe for sample collection. Any failure to collect samples as required by this Consent Decree, including as a result of insufficient discharge, shall be documented, including by taking photographs, and submitted to LA Waterkeeper by email, along with rain gauge data for the date when the sample should have been collected but was not, within ten (10) days of a written request for such records by LA Waterkeeper.

17.     <u>Sampling Parameters</u>: All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including as a result of changed operations or a revised pollutant source assessment, such parameters shall be treated as if listed in Table 1 for the purposes of this Consent Decree, including the action plan requirements below, and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes.

18.     <u>Laboratory and Holding Time</u>. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite in accordance with the General Permit.

19. <u>Detection Limit</u>: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

20. <u>Reporting</u>: Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within five (5) days of receiving the laboratory report with the results.

### C. REDUCTION OF POLLUTANTS IN DISCHARGES

21. Table 1 Numeric Limits: Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L | Instantaneous NAL |
| | 100 mg/L | Annual NAL |
| Lead | 0.262 mg/L | Annual NAL |
| Oil & Grease (O&G) | 25 mg/L | Instantaneous NAL |
| | 15 mg/L | Annual NAL |
| Zinc | 0.26 mg/L | Annual NAL |
| Copper | 0.0332 mg/L | Annual NAL |
| Iron | 1 mg/L | Annual NAL |
| Aluminum | 0.75 mg/L | Annual NAL |
| pH | 6-9 s.u. | Instantaneous NAL |

22. <u>Table 1 Exceedances</u>. Under this Consent Decree, an "Exceedance" of a Table 1 parameter is defined as follows: an exceedance ("Exceedance") occurs when (i) with respect to a Table 1 parameter representing an Annual NAL, at least one analytical result across two (2) or more QSEs taken for any single parameter within a Reporting Year exceeds the applicable Table 1 Annual NAL Standard[1], or (ii) with respect to a Table 1 parameter representing an Instantaneous NAL, when one (1)

---

[1] As examples: (i) samples from Sample Point 1 exceeding the 0.26 mg/L standard for zinc on December 28, 2023 and on March 15, 2024; or (ii) samples from Sample Point 1 exceeding the 0.26 mg/L standard for zinc on December 28, 2023, and samples from Sample Point 2 exceeding the 0.26 mg/L standard for zinc on March 15, 2024.

1   analytical result from samples taken for any single parameter within a Reporting Year

2   exceeds the applicable Table 1 Instantaneous NAL Standard. An Exceedance shall be

3   a violation of this Consent Decree.

4          23.    Action Plan for Table 1 Exceedances: As of the Effective Date, and for

5   the remainder of the Term, if Defendant discharges non-stormwater from a Discharge

6   Point in violation of paragraph 12, or storm water samples demonstrate an

7   Exceedance as defined above, Defendant shall prepare and submit to LA Waterkeeper

8   a plan for reducing and/or eliminating the relevant discharge of pollutants for the

9   Facility ("Action Plan"). The Action Plan shall be submitted to LA Waterkeeper

10  within thirty (30) days of the non-stormwater discharge or the receipt of the

11  laboratory report demonstrating the Exceedance, as applicable.

12          a.    Action Plan Requirements. Each Action Plan submitted shall include at a

13               minimum: (1) the identification of the contaminant(s) discharged in

14               excess of the numeric limit(s); (2) an assessment of the source of each

15               contaminant exceedance; (3) the identification of any additional BMPs

16               and their design plans, that are required in the reasonable professional

17               judgment of Defendant's consultants to reduce observed pollutant

18               concentrations to below Table 1 values; and (4) time schedules for

19               implementation of proposed BMPs (if any). The time schedule(s) for

20               implementation shall ensure that all additional BMPs are implemented as

21               soon as possible, but in no event later than ninety (90) days following

22               the submission of the Action Plan to LA Waterkeeper, unless a later

23               implementation date is mutually agreed upon by the Settling Parties.

24               Defendant shall notify LA Waterkeeper in writing when an Action Plan

25               has been implemented.

26

27

28

b. <u>Action Plan Proposed BMPs:</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

    i. <u>Hydrologic Controls</u>: Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

    ii. <u>Sweeping</u>: The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

    iii. <u>Treatment Systems</u>: Installing additional components or systems, or otherwise improving, the advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

    iv. <u>Evaluation of BIOCHAR</u>:  Replacing, rehabilitating, or eliminating BIOCHAR filtration units, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c. <u>Action Plan Review</u>: LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and shall either incorporate them or, if the Defendant declines to accept one or more of LA Waterkeepers comments, provide LA Waterkeepers with a written

explanation of the grounds for rejection. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.  Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in paragraph 28 below.

e.  Action Plan Payments: Defendant shall pay One Thousand Dollars ($1,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

**D.  VISUAL OBSERVATIONS**

24.  Storm Water Discharge Observations: During the Term, appropriately trained staff or consultants of Defendant shall conduct visual observations during the Facility's operating hours at each point where storm water is discharged during each QSE for which sampling is conducted. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

25.  Monthly Visual Observations: During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial

activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. Additionally, inspections shall include observations that structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

26.     Visual Observations Records: Defendant shall maintain observation records to document compliance with paragraphs 24 and 25. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in an adequate condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs, in reasonable professional judgement of the Defendant's consultants, that are necessary to document of all the foregoing. Defendant shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

27.     Employee Training Program: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Personnel"), and (2) that these Designated Personnel are trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

a. <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which Designated Employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

b. Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Consent Decree and the General Permit, and shall be provided on an annual basis and repeated to the extent necessary to ensure that all Designated Employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

c. <u>Sampling Training</u>: Defendant shall designate an adequate number of Designated Personnel necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

d. <u>Visual Observation Training</u>: Defendant shall provide training on how and when to properly conduct visual observations to Designated Personnel;

e. <u>Non-Storm Water Discharge Training</u>: Defendant shall train all Designated Personnel at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

f. <u>Employees</u>: All Designated Personnel at the Facility shall participate in the Training Program annually. New Designated Personnel shall participate in the Training Program within thirty (30) days of their hiring date;

g. Defendant shall maintain training records to document compliance with this paragraph and shall provide LA Waterkeeper, within seven (7) days of receipt of a written request, of copies of such training records for up to one (1) year prior to the date of such request;

h. <u>Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP</u>: Within thirty (30) days of the Effective Date, Defendant shall update the SWPPP to the extent necessary to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

28. SWPPP Revisions:

a. <u>Initial SWPPP Revisions</u>: Defendant shall amend the Facility's SWPPP to the extent necessary to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the updated SWPPP to SMARTS and LA Waterkeeper within thirty (30) days of the Effective Date.  The updated SWPPP shall contain, at a minimum, the following elements:

i. A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

15

CONSENT DECREE

  ii. A detailed narrative description of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

  iii. Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

  iv. A site map that complies with section X.E of the General Permit and provisions of this Consent Decree;

  v. A MIP as required by sections XI and X.I of the General Permit; and

  vi. A Training Program as described above at paragraph 27.

 b. <u>Additional SWPPP Revisions</u>:

  i. Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit it to SMARTS and LA Waterkeeper.

  ii. Within thirty (30) days after any significant changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit it to SMARTS and LA Waterkeeper.

c. <u>Review of SWPPP</u>:  For any SWPPP updates pursuant to paragraphs 28(a) and 28(b), LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's SWPPP to provide Defendant with written comments. Within thirty (30) days of receipt of such written comments, if any, Defendant shall either further update the SWPPP to incorporate LA Waterkeeper's comments or justify in writing why a comment is not incorporated, provided that the uploading of the SWPPP to SMARTS shall not be a justification as to why a change requested by LA Waterkeeper is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following incorporation of any proposed modification or additions into each revised SWPPP, Defendant shall upload the further revised SWPPP to SMARTS, provided that submittal of any SWPPP revision that incorporates Waterkeeper comments will not trigger further notification or comment obligations under this Consent Decree.

**E. COMPLIANCE MONITORING AND REPORTING**

29.    Each Reporting Year during the Term, LA Waterkeeper may conduct one (1) noticed, annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection per year. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least forty-eight

(48) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur during a QSE, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility during a QSE. Notice will be provided by electronic mail to the individual(s) designated below at paragraph 58. During inspections, LA Waterkeepers and its representatives shall wear appropriate PPE and footwear, and shall remain in the presence of the Defendant's representative. LA Waterkeeper's inspection teams shall consist of no more than four (4) persons. During a QSE inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring, and it is a QSE. Defendant shall collect the sample and LA Waterkeeper may collect split samples of discharges at the Facility designated sampling locations from the QSE. Any split samples collected by LA Waterkeeper shall be submitted to a certified California laboratory for analysis. Any onsite measurements such as pH shall be taken by a properly trained operator with properly calibrated instruments following manufacturer requirements. LA Waterkeeper shall provide the Defendant with a copy of the Chain of Custody and complete laboratory reports documenting results of split sampling within thirty (30) days thereof. LA Waterkeeper shall be permitted to take photographs of pertinent exterior storm water exposed industrial areas with permission from the Defendant or their representatives during any Site Inspection.

30. <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a. Defendant shall copy LA Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the

Facility that are submitted to the Regional Board, the State Board, and/or
any state or local agency, county or municipality;

b.   Any compliance document, inspection report, written communication
and/or correspondence, or any document related to storm water quality at
the Facility received by Defendant from the Regional Board, the State
Board, and/or any state or local agency, county, municipality shall be
sent to LA Waterkeeper within three (3) business days of receipt by
Defendant. Defendant shall mail paper copies or email electronic copies
of documents to LA Waterkeeper at the relevant notice address
contained below.

31.   <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs
associated with Plaintiff's monitoring of Defendant's compliance with this Consent
Decree during the Term by paying Seven Thousand Five Hundred Dollars
($7,500.00).  In the event that there is an additional site inspection in a given year to
resolve a dispute pursuant to Section IV of this Consent Decree, in which case
Defendant shall reimburse LA Waterkeeper an additional One Thousand Dollars
($1,000.00) during such year. Payment shall be made within ten (10) days of the
Effective Date, and within thirty (30) days after any additional site inspection, as
applicable. The payment shall be made via check, made payable to: "Los Angeles
Waterkeeper" via certified mail, return receipt requested to Los Angeles
Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA
90012.

32.   Failure to submit payment as required under this paragraph will
constitute breach of the Consent Decree.

### F. ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST

33.    <u>Environmental Mitigation Project</u>: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in watersheds tributary to Los Angeles Harbor, Long Beach Harbor and San Pedro Bay, Defendant agrees to make a payment totaling Fifteen Thousand Dollars ($15,000.00) to the Rose Foundation made within thirty (30) days of the Effective Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607.

34.    <u>LA Waterkeeper's Fees and Costs</u>: Defendant agrees to pay a total of Sixty-Two Thousand Dollars Five Hundred ($62,500.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payments shall be made in four (4) equal installments of Fifteen Thousand Six Hundred and Twenty-Five Dollars ($15,625.00), starting ten (10) days after the Effective Date and delivered on a quarterly basis thereafter. Payments shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609.

35.    If Defendant fails to submit to LA Waterkeeper any payment or document, report or other communication required by this Consent Decree, LA Waterkeeper shall provide written notice of such failure to Defendant and its representative at the contact information indicated at Paragraph 58 of this Consent Decree.  Defendant shall have fourteen (14) days from receipt of such written notice to correct the failure by providing such missing payment, document, report or other communication to LA Waterkeeper, provided that Defendant shall be provided an

additional seven (7) day extension of time for good cause upon written notification to LA Waterkeeper.  Thereafter, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500.00) per day. Such stipulated payments shall be made by check payable to: the Rose Foundation for Communities and the Environment, sent via overnight mail to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability. For the avoidance of doubt, this paragraph shall not apply to the extent any alleged failure to make a payment or provide any document, report, or other communication is disputed and subject to ongoing dispute resolution procedures as described in this Consent Decree.

36.     Interest on Late Payments: Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree. Interest on late payments shall be made by check to the Rose Foundation for Communities and the Environment, sent via overnight mail to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607. Such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33.

IV. **DISPUTE RESOLUTION**

37.     This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court

shall have the power to enforce this Consent Decree with all available legal and equitable remedies.

38.   _Meet and Confer_. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute.

39.   _Settlement Conference_. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 38, the Parties agree to request a judicial settlement conference before a Magistrate Judge assigned to this action.  The Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference pursuant to this Paragraph.  If the Parties cannot resolve the dispute by the conclusion of the settlement conference before the Magistrate Judge, the Parties agree to submit the dispute for formal resolution by filing a motion before the United States District Court for the Central District of California.

40.   In resolving any dispute arising from this Consent Decree before the Court, either Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. **MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

41.   _Plaintiff's Waiver and Release of Defendant_. Upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers, directors, employees, representatives, parents, subsidiaries, affiliates, and each of their respective successors and assigns, release Defendant, its officers, directors,

employees, representatives, parents, subsidiaries, affiliates, and each of their respective successors or assigns, from and waives all claims, liabilities, damages, injuries, actions, or causes of action that (i) were or could have been raised in the 60-Day Notice and/or the Complaint, or (ii) arise from facts, events or circumstances to the extent relating to the Facility on or prior to the Effective Date.

42.   <u>Defendant's Waiver and Release of Plaintiff</u>. Upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, representatives, parents, subsidiaries, affiliates, and each of their respective successors and assigns, release Plaintiff, its officers, directors, employees, representatives, parents, subsidiaries, affiliates, and each of their respective successors or assigns, from and waives all claims, liabilities, damages, injuries, actions, or causes of action (i) relating to the 60-Day Notice and/or the Complaint, or (ii) that arise from facts, events or circumstances to the extent relating to the Facility on or prior to the Effective Date.

43.   Except as expressly provided in paragraph 41 hereof, nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

VI. **MISCELLANEOUS PROVISIONS**

44.   <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.

1  The Defendant maintains and reserves all defenses it may have to any alleged

2  violations that may be raised in the future.

3       45.    Counterparts. This Consent Decree may be executed in any number of

4  counterparts, all of which together shall constitute one original document.  Telecopy

5  and/or facsimile copies of original signature shall be deemed to be originally

6  executed counterparts of this Consent Decree.

7       46.    Authority. The undersigned representatives for Plaintiff and Defendant

8  each certify that s/he is fully authorized by the party whom s/he represents to enter

9  into this Consent Decree. A Party's signature to this Consent Decree transmitted by

10  facsimile or electronic mail shall be deemed binding.

11       47.    Construction. The language in all parts of this Consent Decree shall be

12  construed according to its plain and ordinary meaning, except as to those terms

13  defined in the Permit, the Clean Water Act, or specifically herein. The captions and

14  paragraph headings used in this Consent Decree are for reference only and shall not

15  affect the construction of this Consent Decree.

16       48.    Full Settlement. This Consent Decree constitutes a full and final

17  settlement of this matter.

18       49.    Integration Clause. This is an integrated Consent Decree. This Consent

19  Decree is intended to be a full and complete statement of the terms of the agreement

20  between the Parties and expressly supersedes any and all prior oral or written

21  agreements, covenants, representations, and warranties (express or implied)

22  concerning the subject matter of this Consent Decree.

23       50.    Severability. In the event that any provision, paragraph, section, or

24  sentence of this Consent Decree is held by a court to be unenforceable, the validity of

25  the enforceable provisions shall not be adversely affected.

26       51.    Choice of Law. The laws of the United States and the state of California

27  shall govern this Consent Decree.

28

CONSENT DECREE

52.   <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

53.   <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

54.   <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

55.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

56.   <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

57.   <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism,

sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

58. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

<u>If to Plaintiff</u>:
Anthony M. Barnes
Aqua Terra Aeris Law Group LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
amb@atalawgroup.com

<u>With copies to</u>:
Los Angeles Waterkeeper
Barak Kamelgard
Benjamin Harris
360 E 2nd St Suite 250
Los Angeles, CA 90012
barak@lawaterkeeper.org
ben@lawaterkeeper.org
Phone: (310) 394-6162

<u>If to Defendant</u>:
Sause Bros, Inc.
Attn: Cory Sause
1607 West Pier D Street
Long Beach, CA 90802

<u>With copies to</u>:
Perkins Coie, LLP
Attn: Ray Hartman
11452 El Camino Real. Suite 300
San Diego, CA 92130
RHartman@perkinscoie.com
Phone: (858) 720-5772

<u>And</u>:
Haley & Aldrich
Attn: Kendra Carter
2033 North Main Street, Suite 309

Walnut Creek, CA 94596
KCarter@haleyaldrich.com
Phone: (619) 280-9210

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

59.     If for any reason the DOJ objects to, or the District Court should decline to approve, this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

1        IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

2   as of the date first set forth below.

3

4   APPROVED AS TO CONTENT

5

6

7   Dated: August 25, 2023        By: _____

8                               Bruce Reznik

                            Executive Director

9                               Los Angeles Waterkeeper

10

11  Dated: August 25, 2023        By: _____

12                              Cory Sause

                            Vice President

13                              Sause Bros., Inc.

14

15  APPROVED AS TO FORM

16                       AQUA TERRA AERIS LAW GROUP

17

18

19  Dated: August 25, 2023        By: _____

20                              Anthony M. Barnes

                            Attorney for Plaintiff

21                              Los Angeles Waterkeeper

22

23                       PERKINS COIE LLP

24

25  Dated: August 25, 2023        By: _____

26                              M. Ray Hartman III

                            Attorney for Defendant

27                              Sause Bros., Inc.

28

[PROPOSED] CONSENT DECREE

1

**IT IS SO ORDERED.**

2

**FINAL JUDGMENT**

3

4       Upon approval and entry of this Consent Decree by the Court, this Consent

5   Decree shall constitute a final judgment between the Plaintiff and Defendant.

6

7   Dated:   November 22, 2023                CENTRAL DISTRICT OF CALIFORNIA

8

9

10

11   HON. SHERILYN PEACE GARNETT
     United States District Court Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE